1997 SD 65

**William B. HORNE, Plaintiff and Appellant,**

v.

**Brian CROZIER, individually and as an employee of the City of Sioux Falls, and City of Sioux Falls, Defendants and Appellees.**

No. 19536.

Supreme Court of South Dakota.

Argued Dec. 4, 1996.

Decided June 4, 1997.

Eugene J. Irons, Sioux Falls, for plaintiff and appellant.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

KONENKAMP, Justice.

[¶ 1] This case raises the question whether a police officer violates a citizen's civil rights for "gross negligence" in fastening handcuffs too tight. After a traffic stop, William B. Horne was arrested for driving with license revoked and DUI. Contending the handcuffs caused permanent disability, Horne sued Officer Brian Crozier and the City of Sioux Falls. The circuit court granted summary judgment for defendants, and we affirm, finding the purported wrongdoing insufficient to establish a Fourth Amendment violation under 42 U.S.C. § 1983.

### Facts

[¶ 2] On May 5, 1991, at approximately 3:30 a.m., Horne, a California resident, was driving down Sixth Street in Sioux Falls. When Crozier stopped him for speeding, he learned Horne's license had been revoked. Crozier had him perform some field sobriety tests. Following a preliminary breath test, Horne was arrested for DUI and taken to McKennan Hospital to have a blood sample drawn. During the trip, Horne claims his handcuffs were so tight he suffered excruciating pain, but Crozier ignored his pleas to loosen them. Horne believes they remained in the patrol car for an unduly long time, protracting his torment.

[¶ 3] When they arrived at McKennan, a nurse drew a sample of Horne's blood: the alcohol level later tested at .10 percent, according to Horne. In his affidavit and deposition, Horne said the nurse remarked to the officer that Horne's wrists were injured, but Crozier disregarded her suggestion for treatment. Horne was then recuffed, even more tightly than before, he asserts, and taken to the Minnehaha County Jail, booked for DUI and released on bond. As there were no

factual submissions from defendants, including no deposition or affidavit from either Crozier or the nurse, Horne's version rests uncontradicted.[1]

[¶ 4] On May 20, 1991, Horne pled guilty to a reduced charge of reckless driving. He eventually underwent surgery for carpal tunnel syndrome, a condition caused by the handcuffs, according to Dr. Alan Greenwald, Horne's treating physician in California. In June 1992, Horne brought this action, averring false arrest and excessive force. Defendants promptly answered, but the case languished, enduring four attorney changes by Horne and unexplained delays in discovery.[2] Defendants moved for summary judgment or, in the alternative, dismissal for failure to prosecute. In a hearing on December 28, 1995, the court granted summary judgment for defendants.

### Standard of Review

[¶ 5] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15-6-56(c); *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852. If no issues of material fact exist, and legal questions have been correctly decided, we will affirm. *City of Lennox v. Mitek Industries, Inc.*, 519 N.W.2d 330, 332 (S.D.1994); *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be construed in favor of the nonmoving party, *Rehm v. Lenz*, 1996 SD 51, ¶ 9, 547 N.W.2d 560, 564, while the moving party must show the absence of any genuine issue of material fact. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). If the circuit court reaches the right conclusion for the wrong reason, we will nonetheless affirm. *Kehn v. Hoeksema*, 524 N.W.2d 879, 881 (S.D.1994); *City of Sioux Falls v. Miller*, 492

N.W.2d 116, 118 (S.D.1992) (citations omitted). In fact, affirmance is suitable if any legal basis exists to support the court's decision. *St. Paul Fire & Marine Ins. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994); *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991) (citations omitted). Summary judgment is a preferred process to dispose of meritless claims. *See Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d 416, 418 (S.D.1993)(citing *Janklow v. Viking Press*, 378 N.W.2d 875, 877 (S.D.1985)). Our Highest Court considers summary judgment a venerable device in the pursuit of justice:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265, 276 (1986) (citations omitted).

[¶ 6] The circuit court found both the officer and the City were protected by qualified immunity. Qualified immunity is a legal question to be decided by the court; thus, it is particularly amenable to summary judgment. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589, 595 (1991)(per curiam). The Supreme Court has emphasized that "because '[t]he entitlement is an *immunity from suit* rather than a mere defense to liability,' *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* To find whether qualified immunity applies, the test is to ask if the officer's conduct violated clearly established statutory or constitutional rights a reasonable officer would have known at the time. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982); *see also Anderson v. Creighton*, 483 U.S. 635,

---

1. Crozier's opposing affidavit, offered and then apparently withdrawn, is not of record. Horne's counsel moved this affidavit not be considered, as it was offered less than five days in advance of the hearing. The motion was never ruled upon.

2. Horne's switching of South Dakota attorneys may explain some of the delay. Not only did he change counsel in South Dakota four times, but the record also shows he attempted to retain out-of-state lawyers, including Gerry Spence and the late Melvin Belli. He also appeared pro se occasionally.

639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523, 530 (1987); *Gainor v. Rogers,* 973 F.2d 1379, 1382 (8thCir.1992). This "objective legal reasonableness" standard means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531; *Hafner v. Delano,* 520 N.W.2d 587, 591 (S.D.1994). Qualified immunity is a personal defense. *Hafner,* 520 N.W.2d at 591. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

[¶ 7] Law enforcement officers will be shielded by qualified immunity if (1) their conduct violates no clearly established constitutional or statutory rights; or (2) it is objectively reasonable for them to believe their acts did not violate those rights. *Anderson,* 483 U.S. at 638–39, 107 S.Ct. at 3038, 97 L.Ed.2d at 530; *Hafner,* 520 N.W.2d at 591 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531); *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410; *Gainor,* 973 F.2d at 1384 ("This [analysis] allows ample room for a good faith mistake by the officer since his conduct must be measured in terms of the belief of a reasonable officer based upon the facts then available to the officer.").

### Analysis and Decision

[¶ 8] On appeal, Horne urges our attention to several issues: (1) Officer Crozier falsely arrested him as there was no probable cause; (2) the officer's gross negligence produced a genuine § 1983 action for excessive force; and (3) the court should have granted his motion for partial summary judgment on liability.

#### [¶ 9] *1. Unlawful Arrest*

■■■ [¶ 10] Horne asserts Crozier lacked probable cause to arrest him. To support his position, he recites a succession of legal defects surrounding his arrest, including: he was not speeding; his DUI arrest lacked probable cause; he performed well on the field sobriety tests; and it was improper for the officer to require a blood test after the breathalyzer revealed the presence of minimal alcohol. Regardless, all these points became footless once Horne pled

guilty to reckless driving. A plea of guilty forestalls any later claim in a § 1983 action that an arrest lacked probable cause. *Malady v. Crunk,* 902 F.2d 10, 11–12 (8thCir.1990). *See generally Broughton v. State,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 315 (1975), *cert. denied* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975)(a conviction is "conclusive evidence of probable cause"). Persons who believe they have been unlawfully arrested must persevere to acquittal or outright dismissal to maintain a valid § 1983 action for false arrest. *Roesch v. Otarola,* 980 F.2d 850, 853 (2dCir.1992). Under South Dakota law, a plea, once given, waives all complaints about nonjurisdictional defects. *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994); *State v. Crow,* 504 N.W.2d 336, 338–39 (S.D.1993); *State v. Anderson,* 417 N.W.2d 403, 405 (S.D.1988); *State v. Grosh,* 387 N.W.2d 503, 506 (S.D. 1986). "A plea is intelligent and voluntary when the accused has a full understanding of his constitutional rights and, having the understanding, waives them." *Two Eagle,* 522 N.W.2d at 768 (citing *Petrilli v. Leapley,* 491 N.W.2d 79, 82 (S.D.1992)). Horne never argues his reckless driving plea, which arose from the same facts as the DUI charge, was the product of misunderstanding, coercion or lack of knowledge. He admits he wanted to finish the case so he could return to San Francisco to attend to another legal matter. Horne pled guilty to a charge stemming from the very arrest he claims was defective and, in so doing, waived lack of probable cause as a basis for suit under § 1983.

#### [¶ 11] *2. Gross Negligence and Excessive Force*

■■■ [¶ 12] In his complaint, Horne alleges, "Defendant Crozier with gross negligence used such excessive force in handcuffing Plaintiff's wrists ... which gross negligence resulted in Defendant's unreasonable seizure.... As a direct and proximate result of Defendant's foregoing specified gross negligence and violations of Plaintiff's civil rights vested by 42 U.S.C. § 1983, Plaintiff has to date sustained [damages]." Horne's appellate brief also broaches negligence per se in

Crozier's use of handcuffs. The Civil Rights Act of 1871 (42 U.S.C. § 1983) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To establish a claim under § 1983, a plaintiff must allege and show deliberate action. "Historically, [the] guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, 668 (1986)(lack of due care by official causing unintended injury does not implicate the due process clause). *See also Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)(must show invidious discriminatory purpose for a § 1983 action); *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 260 (1976)(required showing of "deliberate indifference" to a prisoner's injury for § 1983 liability). A plaintiff must show an affirmative act creating an abuse of power to constitute deprivation. *Daniels*, 474 U.S. at 330, 106 S.Ct. at 664, 88 L.Ed.2d at 667. Mere negligence is not enough. *Id.; Chapman v. Musich*, 726 F.2d 405, 407 (8thCir.1984), *cert. denied* 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984).

▪ [¶ 13] Of course, use of "excessive force is impermissible even during a lawful arrest." *Weyant v. Okst*, 101 F.3d 845, 858 (2dCir.1996). To judge a § 1983 excessive force claim under the Fourth Amendment, the test is whether the officer's actions were "objectively reasonable" considering the circumstances, "without regard to [the officer's] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 456 (1989) (citations omitted).

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. at 1872, 104 L.Ed.2d at 455–56.[3] A conscious choice to inflict force and a negligent exercise of force are wholly different species of conduct. Only the first implicates a constitutional infringement. Gross negligence in conducting an arrest is altogether insufficient to sustain an action under § 1983. *Davis v. Fulton County, Ark.*, 90 F.3d 1346, 1352 (8thCir.1996)("Negligent, or even grossly negligent, conduct by government officials cannot be the basis of a constitutional tort claim.") (citations omitted); *Lewellen v. Metro. Govern. of Nashville*, 34 F.3d 345, 351 (6thCir.1994), *cert. denied* 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995)(noting gross negligence is not enough in a § 1983 action because it is not "arbitrary in the constitutional sense")(quoting *Collins v. Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 1071, 117 L.Ed.2d 261, 276 (1992)); *Rasmussen v. Larson*, 863 F.2d 603 (8thCir.1988); *Gonzalez v. City of Chicago*, 888 F.Supp. 887, 890 (N.D.Ill.1995); *Morton v. City of Little Rock*, 728 F.Supp. 543, 546 (E.D.Ark.1989), *aff'd* 934 F.2d 180 (8thCir.1991).

▪ [¶ 14] In any given action, the plaintiff bears the burden to proceed. *Du-Al Mfg. Co. v. Sioux Falls Constr. Co.*, 444 N.W.2d 55, 56 (S.D.1989); *Duncan v. Pennington County Hous. Auth.*, 382 N.W.2d 425, 427 (S.D.1986). Pleadings must include

---

**3.** Some factors which may guide a court in determining objective reasonableness include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455 (1989).

a simple statement of the prima facie elements of the claim to give proper notice to a defendant. *Biddle v. Sartori Memorial Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994); *Bakody Homes & Dev. v. City of Omaha*, 246 Neb. 1, 516 N.W.2d 244, 248 (1994); *Stessman v. Am. Black Hawk Broadcasting*, 416 N.W.2d 685, 686 (Iowa 1987). Horne's pleading of gross negligence fails to state a prima facie case under § 1983. We bear no responsibility to restate his case. "[A] deficiency [in the pleadings] will not be supplied by the court." *Appling v. Stuck*, 164 N.W.2d 810, 812 (Iowa 1969); *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907, 910 (1993)(noting a court cannot assume the existence of facts not alleged). On the other hand, while in most instances erroneous pleadings may be a mortal defect, it is well settled courts must liberally construe civil rights actions if they are not conclusory and "set forth facts that state a claim as a matter of law." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 854 (8thCir.1995).

[¶ 15] Beyond mere pleading deficiency, however, Horne's sworn testimony asserts "gross negligence." What are we to make of a § 1983 case in which the claimant persists in declaring negligence forms the basis of the claim not only in pleadings, but in his deposition, and in his summary judgment affidavit? When deposed, Horne was asked:

Q. Now, do you claim that Brian Crozier intended to hurt you or that he was just careless in the way he handcuffed you?

A. I believe he was a little negligent in the way that he handcuffed me.

Q. Do you think that was a result of the fact that he was just not very careful that night or that he's not been properly trained by the city of Sioux Falls?

* * *

A. Like I say, I believe—I don't know the man.

Q. I understand.

A. I don't know him, but at the time he was very negligent in the way that I was treated.

To survive a summary judgment motion, Horne must put forth facts to show Crozier acted in conscious disregard of his constitutional rights. His claim cannot transcend his own testimony. *Connelly v. Sherwood*, 268 N.W.2d 140, 141 (S.D.1978). Horne's proof simply fails to rise to the level of a constitutional violation. *Cf. Cottrell v. Caldwell*, 85 F.3d 1480 (11thCir.1996)(denial of summary judgment on claims of excessive force and custody mistreatment reversed in case where individual handcuffed and in leg restraints died of "positional asphyxiation;" "gross negligence" not part of the standard for judging custody mistreatment). Consequently, we need not reach the issue of qualified immunity because Horne has failed to establish a sufficient § 1983 claim. Applying the standard for assessing Fourth Amendment excessive force claims, whether the officer's actions were "objectively reasonable" in light of all the circumstances, without regard for underlying intent, there was no genuine issue of material fact, and Crozier was entitled to summary judgment as matter of law.

[¶ 16] *3. Police Handcuffing Policy*

[¶ 17] A city "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611, 638 (1978); *Hafner*, 520 N.W.2d at 591. Contrary to the circuit court's ruling, however, cities are not protected by qualified immunity under § 1983. *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685–86 (1980). A municipality may be liable directly when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the city. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 635. *Compare Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45, 58 (1989)(in

contrast to a city or county, a state is not a person subject to suit under § 1983). Treatment of arrestees pursuant to policy, judged within the constitutional framework, will dictate whether local governments are liable under § 1983. *See Billingsley v. St. Louis County,* 70 F.3d 61, 62–63 (8thCir.1995)(liability of municipality revolves around violation of a "clearly established statutory or constitutional right[ ]")(citing *Harlow, supra*).

[¶ 18] Nothing in evidence even alludes to the actual terms of any official policy in Sioux Falls on handcuffing DUI arrestees. Yet counsel for Crozier argued, "Sioux Falls Police Department has an SOP or standard operation procedure of handcuffing all DWI suspects for the protection of the officer." Accepting this as fact, the circuit court then stated, "the officer was just following policy and I think that's clear and that's undisputed." Yet in reality, on the ground of privilege, the court disallowed plaintiff's discovery of the City's Police Policy Procedures Manual. Horne has not appealed this ruling, which tethers our review.

[¶ 19] Under the pleadings and proof, however, the City's policy is immaterial. Horne pled Crozier's "gross negligence" in using handcuffs. That insinuates a misapplication of policy, not a fulfillment of it. "[A]n isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." *Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24, 26 (8thCir.1991)(citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985)(plurality)); *Patzner v. Burkett,* 779 F.2d 1363, 1367 (8thCir.1985)(county cannot be held liable where a plaintiff failed to establish the county had notice of prior misbehavior of police officers and failed to take remedial steps). To establish his claim, Horne must show Sioux Falls "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Thelma D. by Delores A. v. Board of Educ.,* 934 F.2d 929, 934 (8thCir.1991). *See also Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 811(1986)(per curiam)("If a person has suffered no constitu-

tional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). Horne cites no incidents of alleged police misconduct, except his own singular experience. Nor has he given us any authority to support his position that handcuffing a cooperative DUI arrestee, by policy or otherwise, is objectively unreasonable. On the contrary, handcuffing drunk driving arrestees is routine practice in South Dakota. DUI is a first class misdemeanor, carrying a penalty of up to one year in jail, in addition to a fine and loss of license. SDCL 32–23–2. Although the circuit court incorrectly applied qualified immunity, we conclude it properly granted summary judgment for Sioux Falls because whether Officer Crozier negligently fastened the handcuffs too tight, there was no direct causal link between his actions and any alleged policy or custom.

## Conclusion

[¶ 20] Horne waived his § 1983 unlawful arrest claim when he pled guilty to a reduced charge. His excessive force action is deficient as a matter of law and so whatever policy might have been implicated is irrelevant.

[¶ 21] Affirmed.

[¶ 22] MILLER, C.J., and AMUNDSON and GILBERTSON, JJ., concur.

[¶ 23] SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part & dissenting in part).

[¶ 24] I agree on Issue 1 as Horne's guilty plea was a waiver of lack of probable cause as a basis for suit under 42 U.S.C. § 1983.

[¶ 25] I dissent on Issue 2. The majority concludes that Horne, by asserting "gross negligence" in Crozier's use of excessive force, has failed to state a claim under § 1983. This conclusion is incorrect because an assertion of "excessive force" during an arrest, in violation of the Fourth Amendment to the United States Constitution—standing

alone—states the claim, and Crozier's state of mind is essentially irrelevant.

[¶ 26] I would reach the merits of Crozier's qualified immunity defense claim and conclude it is not available to him under these circumstances.

[¶ 27] Additionally, it is incredible that the City of Sioux Falls is allowed to withhold its written police procedure policy manual, yet the circuit court and the majority proceed as if it were produced, concluding that Crozier was simply following "policy" or "routine practice." The majority even states "there was no direct causal link between his actions and any alleged policy or custom." How could we possibly deduce *that* in the absence of the written policy? [4] Therefore, I can only concur in result in affirmance of summary judgment to City.

[¶ 28] **THE USE OF "EXCESSIVE FORCE" DURING AN ARREST CONSTITUTES GROUNDS FOR RELIEF UNDER 42 U.S.C. § 1983.**

[¶ 29] The United States Supreme Court has repeatedly stated that § 1983 is to be broadly construed. *See Dennis v. Higgins,* 498 U.S. 439, 443–45, 111 S.Ct. 865, 868–70, 112 L.Ed.2d 969, 975–77 (1991) (collecting cases):

> A broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of "*any* rights, privileges, or immunities secured by the Constitution and laws." Accordingly, we have repeatedly held that the coverage of § 1983 must be broadly construed. The legislative history of the section also stresses that as a remedial statute, it should be "liberally and beneficiently construed."
>
> . . . .
>
> [W]e have given full effect to its broad language, recognizing that § 1983 provides

a remedy, to be broadly construed, against all forms of official violation of federally protected rights.

(Emphasis in original) (citations & internal quotations omitted). The majority effectively narrows the construction of § 1983 by focusing on Horne's deposition testimony and *his* interpretation of Crozier's actions. *See supra* ¶ 16. Since when do we allow our analysis to be controlled by a party's uninformed legal conclusion? Horne's complaint alleges that Crozier used excessive force in handcuffing him, resulting in permanent damage to his wrists, in violation of the Fourth Amendment to the United States Constitution. His complaint is sufficient to state a claim under § 1983, and the language "gross negligence" is superfluous and irrelevant to the analysis. [5]

[¶ 30] The United States Supreme Court instructs that § 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443, 453–54 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433, 442 n. 3 (1979)).

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. The first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant is charged.

*Id.* at 394, 109 S.Ct. at 1870, 104 L.Ed.2d at 454 (citation & internal quotation omitted). The majority skips this "first inquiry" by assuming the analysis is conducted under § 1983 instead of a specific constitutional provision.

---

4. In resistance to the subpoena to produce the Sioux Falls Police Department's procedure policy manual, Assistant City Attorney Shawn Tornow asserted that "this is a confidential record within the Sioux Falls Police Department." He even claimed, without authority, that there was "case law authority for its confidentiality and we would resist." Incredibly, the trial court granted the defendant's motion to quash the subpoena, apparently on this basis. Unfortunately for

Horne, he did not appeal this ruling. *See infra* note 8.

5. The majority's statement, *supra* at ¶ 14, that "A conscious choice to inflict force and a negligent exercise of force are wholly different species of conduct. Only the first implicates a constitutional infringement," is incorrect and made without supporting authority.

[¶ 31] The *Graham* Court held that the amount of force which an arresting officer may employ is limited by the Fourth Amendment to the United States Constitution. "Today we make explicit what was implicit in [*Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ], and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]" *Id.* at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454. The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. The question is whether the force used to effect a seizure is "reasonable" under the Fourth Amendment.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation.* An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456 (emphasis added) (citations omitted).

[¶ 32] The majority is correct that "mere negligence" is not enough to sustain a § 1983 claim when the plaintiff is asserting a deprivation of certain rights *other* than those protected by the Fourth Amendment. However, as stated above, the arresting officer's state of mind is irrelevant in a Fourth Amendment excessive force case.[6] Therefore, the cases relied upon by the majority in ¶¶ 14–16 are inapposite to the Fourth Amendment analysis set forth in *Graham, supra.* A review of those cases demonstrates that none dealt with excessive force during an arrest, and therefore, none conducted a Fourth Amendment analysis.[7] In this case, Horne may have incorrectly inserted "gross negligence"

---

**6.** The exception to this was stated by the *Graham* Court:

> Of course, in assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen.

*Graham,* 490 U.S. at 399 n. 12, 109 S.Ct. at 1873 n. 12, 104 L.Ed.2d at 457 n. 12.

**7.** For example, the majority cites the following cases to support its conclusion: *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Fourteenth Amendment Due Process Clause); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (Equal Protection Clause of the Fourteenth Amendment); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment prohibition of cruel and unusual punishment); *Chapman v. Musich*, 726 F.2d 405 (8thCir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984) (Sixth Amendment right to effective assistance of counsel); *Davis v. Fulton County, Ark.*, 90 F.3d 1346, 1352 (8thCir.1996) (Fourteenth Amendment); *Lewellen v. Metropolitan Gov't of Nashville*, 34 F.3d 345 (6thCir.1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995) (Fourteenth Amendment Due Process Clause); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (Fourteenth Amendment Due Process Clause & Texas Hazard Communication Act); *Morton v. City of Little Rock*, 728 F.Supp. 543 (E.D.Ark.1989), *aff'd*, 934 F.2d 180 (8thCir.1991) (Fourteenth Amendment Due Process & Equal Protection Clauses). Clearly, these cases do not govern our analysis.

The majority also cites *Rasmussen v. Larson*, 863 F.2d 603 (8thCir.1988), a case in which a claim of excessive force was made. The plaintiffs alleged that the arresting officers acted with gross negligence, thereby depriving their decedent of his liberty interest under the Fourteenth Amendment. "Negligent or even grossly negligent actions do not trigger the *due process clause* [.]" *Id.* at 605 (emphasis added). As for the excessive force claim, the Court of Appeals simply agreed with the trial court that there was insufficient evidence to prove a constitutional violation. *Id.* at 605–06. Without a Fourth Amendment analysis, *Rasmussen,* too, is inapposite to this case. As for *Gonzalez v. City of Chicago*, 888 F.Supp. 887, 890 (N.D.Ill.1995), (again, not a Fourth Amendment excessive force case), that case held that despite plaintiff's incorrect assertion of "gross negligence" in the supervision of police officers, the court would not dismiss that count of the complaint because the plaintiff *did* state a cause of action with his allegation of "deliberate indifference" in that portion of the complaint.

in his complaint, but that language is of no moment. A plain reading of his complaint states a claim of excessive force in violation of the Fourth Amendment, and § 1983 liability may be imposed for such a violation. *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454–55.

[¶ 33] *Graham* explains why an analysis of an excessive force complaint under the Fourth Amendment is conducted without inquiry into the subjective intent of the arresting officer, while excessive force inflicted on a *prisoner* is subject to a different analysis:

> Differing standards under the Fourth and Eighth Amendments [8] are hardly surprising: the terms "cruel" and "punishments" clearly suggest some inquiry into subjective state of mind, whereas the term "unreasonable" does not. Moreover, the less protective Eighth Amendment standard applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts ... have no proper place in that inquiry.

*Id.* at 398–99, 109 S.Ct. at 1873, 104 L.Ed.2d at 457 (citation omitted).

[¶ 34] In light of the correct standard of review of an arresting officer's actions when accused of excessive force, it is obvious summary judgment should not be affirmed in favor of Crozier on this basis.[9] He has failed to demonstrate an absence of a genuine issue of material fact. *See Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 6, 556 N.W.2d 68, 70 (stating that "the burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.") (quoting *State Dep't of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989)). The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. *Id.*

[¶ 35] Even the trial court stated "there is no doubt about the issues of fact ... I don't think we have to waste a lot of time talking about whether the facts are in controversy because I think they are...." Horne claims Crozier used excessive force in using the handcuffs and ignored his pleas to loosen them, causing him severe and debilitating injury. He offers medical testimony to support his claim. As noted by the majority, *supra* at ¶ 3, "As there were no factual submissions from defendants, including no deposition or affidavit from either Crozier or the nurse, Horne's version rests uncontradicted."

[¶ 36] Because Crozier did not meet the standard for a successful motion for summary judgment, we should reverse and remand for trial to determine whether he used excessive force in arresting Horne. This will require an analysis of

> the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [T]he question is "whether the totality of the circumstances justifies a particular sort of seizure."

*Graham*, 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455 (citations & alterations omitted).

### [¶ 37] SUMMARY JUDGMENT WAS IMPROPERLY GRANTED ON THE BASIS OF QUALIFIED IMMUNITY.

[¶ 38] The trial court applied the incorrect standard in determining whether the defense of qualified immunity is available to Crozier.[10] In *Hafner v. Delano*, 520 N.W.2d 587 (S.D.1994), we adopted the Eighth Circuit Court of Appeals' three-part test to determine whether qualified immunity precludes a § 1983 claim:

> 1. First, we determine whether the plaintiff has asserted a violation of a constitutional right;

---

8. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."

9. Whether Crozier is entitled to the defense of qualified immunity is discussed *infra* at ¶¶ 38–41.

10. As already noted by the majority, *supra* at ¶ 18, the trial court erred in granting summary judgment to the City of Sioux Falls on the basis of qualified immunity, as that defense is not available to a municipality.

2. Second, we determine whether the allegedly violated constitutional right was clearly established; and

3. Third, we determine if, given the facts most favorable to the plaintiff, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions violated that right.

*Id.* at 592 (quoting *Foulks v. Cole Cty.*, 991 F.2d 454, 456 (8thCir.1993) (citing *Cross v. City of Des Moines*, 965 F.2d 629, 631–32 (8thCir.1992))).

[¶ 39] First, as already discussed, Horne has adequately asserted a violation of his Fourth Amendment right to be free from unreasonable seizures, i.e., the right to be free from a law enforcement officer's use of excessive force during an arrest.

[¶ 40] Second, this constitutional right is clearly established. The burden is on Horne to show that Crozier's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982). "[I]n the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987) (citations omitted). Obviously, a reasonable police officer should know of the Fourth Amendment's proscription of unreasonable seizures. *See also* SD Const. art. VI, § 11 ("The right of the people to be secure in their persons . . . against unreasonable . . . seizures shall not be violated[.]");

SDCL 23A–3–5 (providing, in relevant part, "No person shall subject an arrested person to more physical restraint than is reasonably necessary to effect the arrest.").

[¶ 41] Third, viewing the facts most favorable to Horne, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged actions, handcuffing so tightly as to cause permanent physical injuries, violated that right. While Horne carried the burden on the first two prongs, Crozier bears the burden to show that there were extraordinary circumstances or that he neither knew nor should have known of the relevant legal standard. Qualified immunity is an affirmative defense, and the burden of proving the defense lies with the official asserting it. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738, 73 L.Ed.2d at 411; *accord Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8thCir.1989). As previously noted, Crozier offered no facts to support his motion for summary judgment. Crozier argued and the trial court granted summary judgment on the basis of an alleged policy of handcuffing drunk drivers. Even if we assume such a policy exists, it would not relieve Crozier of liability under § 1983 for using excessive force in the course of handcuffing a *cooperative* arrestee.[11] Crozier is not entitled to qualified immunity in the absence of showing either 1) extraordinary circumstances or 2) that he neither knew nor should have known of the relevant legal standard. Because he demonstrated neither, genuine issues of material fact remain whether he used excessive force in handcuffing

11. The trial court was incorrect in granting summary judgment to Crozier on the basis of his alleged adherence to police policy. The significance of a policy in a § 1983 action concerns City's liability. The United States Supreme Court stated that a municipality is a "person" for liability purposes under § 1983 in *Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611, 635 (1978). A municipality may be held liable only if a municipal custom or policy caused the deprivation of the constitutional or statutory right. *Id.* at 690–91, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 636. The plaintiff must show that

[t]he action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by the municipality's officers or that a constitutional deprivation was visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision channels.

*Marchant v. City of Little Rock, Ark.*, 741 F.2d 201, 204 (8thCir.1984) (quoting *Monell, supra*).

In his docketing statement to this court, Horne listed as an issue for appeal whether the trial court erred by quashing his subpoena duces tecum, in which he requested copies of City's police procedure policy manual. However, he did not brief or argue this issue in this appeal and it is waived. Therefore, I concur in result of affirmance of summary judgment to City. I do not agree with the majority that the policy is "immaterial." ¶ 20, *supra*.

Horne, and summary judgment was improperly granted on this basis. *See Arnott v. Mataya*, 995 F.2d 121 (8thCir.1993) (genuine issue of material fact as to conduct engaged in by officers precluded summary judgment on ground of qualified immunity); *accord Washington v. Newsom*, 977 F.2d 991 (6thCir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993); *see also Butler v. City of Norman*, 992 F.2d 1053 (10thCir.1993) (upholding denial of summary judgment on ground of qualified immunity when plaintiff's testimony was sufficient to support a claim of violation of clearly established law under *Graham, supra* ). We should reverse and remand for a trial.